## JOHN KEES v. THE STATE.

### No. 2536.   Decided March 4, 1903.

**1.—Recognizance on Appeal—Aggravated Assault.**

A recital in a recognizance on appeal, that appellant was convicted of an "aggravated assault," is equivalent to a recitation that he was convicted of a misdemeanor—aggravated assault being a misdemeanor—and the recognizance will not be held insufficient because it did not recite, in terms, that appellant was convicted of "a misdemeanor."

**2.—Same—Designation as to Court.**

A recognizance on appeal which binds appellant, that he "will not depart without leave of 'the'" instead of "this" court, is sufficiently definite and certain to indicate the particular court before which appellant bound himself to appear. Distinguishing Thompson v. State, 35 Texas Crim. Rep., 505.

**3.—Aggravated Assault—Conspiracy—Charge.**

A trial for aggravated assault, where there was no evidence tending to show that defendant had previously entered into a conspiracy with other parties to whip the prosecutor, and the court, upon the theory that a conspiracy was shown as to such other parties, charged that, if defendant acted with them in accordance with such conspiracy, defendant would be liable for the words and acts, from the beginning, of each of such parties having relation to the offense. Held, the charge should have also submitted the alternative proposition, that if defendant had not participated in such previous conspiracy, the evidence in regard thereto should not affect him.

**4.—Same—Self-Defense—Provoking Difficulty by Another—Charge.**

On a trial for aggravated assault, in which several parties participated, and in which one D. stabbed the prosecutor with a knife, a charge of the court was erroneous which cut off defendant's right of self-defense if D. provoked the difficulty, regardless of whether defendant knew the fact that D. did provoke the difficulty.

Appeal from the District Court of Ellis. Tried below before Hon. J. E. Dillard.

Appeal from a conviction of aggravated assault; penalty, a fine of $25.

The indictment charged appellant with an assault with intent to murder T. L. Bentley, on the 10th day of October, 1901.

The essential facts as to the difficulty are sufficiently stated in the opinion.

*Templeton & Harding,* for appellant, filed an able brief, mainly relying upon the points discussed in the opinion as grounds for reversal.

*Howard Martin,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of aggravated assault, and his punishment assessed at a fine of $25; hence this appeal.

The Assistant Attorney-General has filed a motion to dismiss this appeal because of alleged defects in the recognizance: First. Because the recognizance does not recite that appellant was convicted of a misdemeanor, and the recitation that he was convicted of an "aggravated assault" is not a compliance with the statutes. We hold that aggravated assault (the same being a misdemeanor) is equivalent to a recitation that appellant was convicted of a misdemeanor, and the appeal will not be dismissed on this ground. And, second, because the recognizance uses this language, "and not depart without leave of the court," when it should read, "and not depart without leave of this court." The contention is that the use of the word "the" in that connection instead of "this" leaves it uncertain whether the district court or the Court of Criminal Appeals is meant; and refers us to Thompson v. State, 35 Texas Crim. Rep., 505. There is some difference between the recognizance in that case, which was pronounced defective, and the one here. In the former case the expression "shall appear before this court" is omitted, while here it is inserted, and, following this, the article "the" is used instead of "this." It is not necessary to review the correctness of the holding in the Thompson case, as there is a difference between the two cases. We hold, however, in this case that the recognizance is sufficiently definite and certain to indicate the particular court before which appellant bound himself to appear. The motion of the Assistant Attorney-General is accordingly overruled.

The theory on the part of the State tended to establish that Ed Derrett made an assault on T. L. Bentley at a show or exhibition of some sort at a schoolhouse, and that during the progress of the difficulty appellant came up to the parties and stabbed T. L. Bentley in the back. The State further insisted that said assault was made by Derrett on Bentley in pursuance of a previous conspiracy between Derrett, Phillips, Newman and appellant. The State's testimony tended to show that said Derrett either made the first assault on Bentley or provoked Bentley to make an assault on him, and that the other parties joined in said assault. Appellant, on the other hand, urged that he had no connection with any conspiracy with said parties to assault said Bentley, and what he did at the time was merely to aid in separating Derrett and Bentley. During the difficulty Derrett used a knife, and Bentley used a pistol as a club. Bentley knocked Derrett down with his pistol, and Derrett cut him with the knife; and there was testimony on the part of the State tending to show that appellant also cut Bentley with a knife.

During the trial, the State proved, by the witness Jim Howell, that on the evening of October 10th, before the difficulty which occurred that night, John Phillips came to where he lived at Oak, some two miles from Ozro, and put in a phone call for Ed Derrett at Ozro; that Phillips took the receiver and started to talk, and said, "Oh, hell!' I don't want Jim Newman; I want Ed Derrett;" and shortly afterwards asked over

the phone if that was Ed Derrett, and then began talking to him, and inquired of him about "that business." Derrett did not seem to understand what business he was alluding to. Then Phillips said, "God dern you, stand there like you don't know what I mean. You know what I mean." And then said, "The tree is falling," or "about to fall;" that he had a 44, and would be there that night. The State also proved by the witness Henry Jackson that on the night of October 10th he heard Derrett, at the store of Jim Newman at Ozro, tell John Phillips "to get his hat and let's go up to the schoolhouse and whip hell out of T. L. Bentley;" that Phillips said, "All right;" that when they closed up the store and started for the schoolhouse that they talked like they were mad. That he told them they had better get Bentley away from the schoolhouse, that there were many women and children there, and they said they could beat it in Ozro." All this testimony was objected to on the ground that appellant was not present and could not be bound by it, and because there was no testimony showing he was in any way connected with any agreement or conspiracy with said parties. We have carefully examined the record and, aside from what the State proved appellant did at the schoolhouse on that night, there is absolutely no evidence tending to show appellant engaged in a conspiracy with said parties to whip Bentley on that occasion. If it be conceded that what he did there, as testified to by the State's witnesses, indicate a conspiracy on his part to join with the others in the assault on Bentley, then very clearly the court should have safeguarded appellant's rights with reference to said testimony. We have examined the court's charge, which is excepted to on this branch of the case, and find that the court in effect told the jury that, if they believed said parties acted together in accordance with the previous agreement or understanding, the words and acts of each of the parties having relation to the offense from the beginning of the unlawful enterprise and until it should have been completed became the words and acts of each and all of the parties. If it be conceded that said charge was proper, as applied to the facts of this case, on the ground that the conspiracy was shown in which this appellant participated, then unquestionably the alternative proposition should have been given to the jury, predicated on the idea that, if the conspiracy had not been shown in which defendant participated with said Ed Derrett and other parties, then the jury should not regard the testimony of Jim Howell and Henry Jackson, because in such case the evidence could not affect appellant.

Appellant also insists that the court's charge was erroneous and injurious to him, because in the charge which cut off Derrett's right of self-defense as against Bentley on the ground that he provoked the difficulty, the court made appellant's rights depend on the action of Derrett in provoking the difficulty, regardless of whether defendant had any knowledge of such conduct on the part of Derrett. The court's charge in this respect was substantially as follows: "That if the jury

believed Bentley assaulted Derrett, and defendant Kees interfered in the difficulty on behalf of Derrett, to prevent his being killed or seriously injured, and that he cut or stabbed said Bentley in the back with a knife, then to acquit defendant, unless they should believe that Derrett provoked or brought about the difficulty with Bentley for the purpose of obtaining a pretext to take his life or of doing him serious bodily injury; in such case Derrett could not justify his conduct in cutting T. L. Bentley with his knife, although at the time he may have been acting in self-defense. Neither would the defendant be justified under the law of self-defense in stabbing T. L. Bentley in the back, if he did so." As we understand this charge, it is subject to the criticism of appellant; that is, his right of self-defense was cut off in case the jury believed that Derrett provoked the difficulty, regardless of whether appellant knew the fact that he did provoke the difficulty. This charge was erroneous.

For the errors discussed the judgment is reversed and the cause remanded.

*Reversed and remanded.*